UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **RICHARD W. EDWARDS,** | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 4:18-CV-00784-NCC ) |
| **ANDREW M. SAUL,**[1] **Commissioner of Social Security** | ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Richard W. Edwards ("Plaintiff") for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.* and 42 U.S.C. §§ 1381, *et seq.* Plaintiff has filed a brief in support of the Complaint (Doc. 18) and Defendant has filed a brief in support of the Answer (Doc. 23). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 8).

### I. PROCEDURAL HISTORY

Plaintiff filed his application for DIB on December 19, 2014 and, on May 13, 2015, was initially denied (Tr. 166-70, 243-44). On July 9, 2015, Plaintiff filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 171-72). While awaiting his March 7, 2017

---

[1] Andrew M. Saul is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew M. Saul shall be substituted for Acting Commissioner Nancy A. Berryhill as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

hearing date, Plaintiff filed an application for SSI on February 5, 2016 (Tr. 274-81).  His SSI application was consolidated with the prior DIB application and, after a hearing, by decision dated July 18, 2017, the ALJ found Plaintiff not disabled (Tr. 90-103).  On April 4, 2018, the Appeals Council denied Plaintiff's request for review (Tr. 1-6).  As such, the ALJ's decision stands as the final decision of the Commissioner.

## II. DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2019, and that Plaintiff has not engaged in substantial gainful activity since July 15, 2013, the alleged onset date (Tr. 92).  The ALJ found Plaintiff has the severe impairments of cervical strain, traumatic brain injury, anxiety, and post-traumatic stress disorder, but that no impairment or combination of impairments met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 93).  After considering the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work[2] with the following limitations (Tr. 95).  He can lift, carry, push and pull 20 pounds occasionally and up to 10 pounds frequently (*Id.*).  He can occasionally climb ramps and stairs, and can never climb ladders, ropes, or scaffolds (*Id.*).  He can frequently stoop, kneel, crouch, and crawl (*Id.*).  He can frequently handle with the left (non-dominant) hand (*Id.*).  He cannot perform work involving hazardous machinery (*Id.*).  He cannot

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls.  To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.  If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. §§ 416.967(b), 404.1567.

do work with more than frequent interactions with supervisors, coworkers, and the general public (*Id.*). He is limited to simple, routine, and repetitive work (*Id.*). The ALJ found Plaintiff not capable of performing any past relevant work but that other jobs exist in significant numbers in the national economy that Plaintiff can perform including greeter, press operator, and assembler (Tr. 102-03). Thus, the ALJ concluded that a finding of "not disabled" was appropriate (Tr. 103). Plaintiff appeals, arguing a lack of substantial evidence to support the Commissioner's decision.

### III. LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled. 20 C.F.R. §§ 416.920, 404.1529. "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)). In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits. 20 C.F.R. §§ 416.920(b), 404.1520(b). Second, the claimant must have a severe impairment. 20 C.F.R. §§ 416.920(c), 404.1520(c). The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ." *Id.* "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'" *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations. 20 C.F.R. §§ 416.920(d), 404.1520(d). If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history. *Id.*

Fourth, the impairment must prevent the claimant from doing past relevant work. 20 C.F.R. §§ 416.920(f), 404.1520(f). The burden rests with the claimant at this fourth step to establish his or her RFC. *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled."). The ALJ will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past. 20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work. 20 C.F.R. §§ 416.920(g), 404.1520(g). At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC. *Steed*, 524 F.3d at 874 n.3. If the claimant meets these standards, the ALJ will find the claimant to be disabled. "The ultimate burden of persuasion to prove disability, however, remains with the claimant." *Young v. Apfel,* 221 F.3d 1065, 1069 n.5 (8th Cir. 2000). *See also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five."). Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). "Substantial evidence is less than a preponderance but

is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002). *See also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo. *Id.* Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion. *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)). Weighing the evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV. DISCUSSION

In his appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff asserts that the ALJ failed to properly evaluate the opinion evidence (Doc. 18 at 3-12). Second, Plaintiff argues that the ALJ failed to determine whether insomnia and fatigue would have affected Plaintiff's RFC assessment (*Id.* at 12-14). Third, Plaintiff asserts that the Appeals Council failed to properly consider new evidence submitted after the ALJ's decision (*Id.* at 14-16). For the following reasons, the Court finds that the ALJ committed reversable error in her failure to appropriately consider the medical opinion of Plaintiff's treating physician, Dr. Emily Doucette, M.D. ("Dr. Doucette").

Plaintiff asserts that the ALJ failed to properly evaluate the several medical opinions of record including that of Dr. Doucette (Doc. 18 at 3-12). Specifically, Plaintiff asserts that the

5

ALJ erred in failing to give Dr. Doucette's opinion controlling weight (*Id.* at 4-10).[3] *See* 20 C.F.R. §§ 404.1527(c), 416.927(c)[4]; *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015). "A treating physician's opinion regarding an applicant's impairment will be granted controlling weight, provided the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record." *Reece v. Colvin*, 834 F.3d 904, 908-09 (8th Cir. 2016) (internal quotations omitted). "Although a treating physician's opinion is usually entitled to great weight, it 'do[es] not automatically control, since the record must be evaluated as a whole.'" *Id.* at 909 (quoting *Prosch v. Apfel*, 201 F.3d 1010, 1013 (8th Cir. 2000)). In evaluating a medical opinion, the ALJ should consider the length, frequency, nature, and extent of the treatment relationship, supportability, consistency with the record as a whole, specialization of the treating source, and other factors supporting or contradicting the opinion. 20 C.F.R §§ 404.1527(c)(2), 416.927(c)(2). "A treating physician's own inconsistency may undermine [her] opinion and diminish or eliminate the weight given [her] opinions." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (internal quotation marks omitted). Whether the ALJ gives the opinion of a treating physician great or little weight, the ALJ must "give good reasons" for doing so. *Prosch*, 201 F.3d at 1013 (citing 20 C.F.R. § 404.1527(d)(2)).

On January 12, 2017, Dr. Doucette completed a Physical Residual Functional Capacity Questionnaire (Tr. 1078-81). In the Questionnaire, Dr. Doucette indicated that she had been

---

[3] The parties do not dispute that Dr. Doucette is Plaintiff's treating physician (*See* Docs. 18 at 4, 23 at 6).

[4] Under current regulations, a treating physician's opinion is entitled to no special deference. *See* 20 C.F.R. § 404.1520c(c). These regulations were effective as of March 27, 2017. 20 C.F.R. § 404.1527. However, Plaintiff's claim was filed on December 19, 2014, so the old regulations apply. *See id.*

treating Plaintiff since June of 2015 with visits scheduled every month to every three months and that Plaintiff had been diagnosed with traumatic brain injury, neuropathic pain, neck pain with polyradiculopathy, post-traumatic stress disorder, depression, and ulnar impact syndrome (Tr. 1078). Dr. Doucette opined that Plaintiff's pain and other symptoms would "constantly" interfere with Plaintiff's attention and concentration (Tr. 1079). Dr. Doucette also indicated that Plaintiff could only walk one to two blocks without rest or severe pain, and could only sit or stand for five minutes at a time and for less than two hours total in an eight-hour working day (*Id.*). Dr. Doucette further opined that Plaintiff would need to get up every 11-15 minutes to walk approximately 6-10 minutes; would need the ability to shift positions at will from sitting, standing or walking; and would need to take unscheduled breaks every two hours for 15 minutes (Tr. 1079-80). Dr. Doucette noted that Plaintiff could occasionally lift less than 10 pounds, rarely lift up to 20 pounds, and never lift 50 pounds (Tr. 1080). As for Plaintiff's head and neck movement, Dr. Doucette stated that Plaintiff could rarely turn his head right or left or hold his head in a static position and could never look down or look up (*Id.*). Dr. Doucette also limited Plaintiff's hand, finger and arm movement; of note, she specifically limited Plaintiff to overhead reaching only 25% of an eight-hour working day (*Id.*). Dr. Doucette determined Plaintiff would be absent from work more than four days per month (Tr. 1080-81).

The ALJ afforded Dr. Doucette's opinion "no weight" (Tr. 100). The ALJ found Dr. Doucette's opinion to be inconsistent with the objective evidence (*Id.*). Specifically, the ALJ indicated that Dr. Doucette's sit/stand limitations are inconsistent with Plaintiff's lack of movement during a lengthy hearing and that Plaintiff's "treatment records are inconsistent with this level of symptom severity or limitation" (*Id.*). The ALJ did not specifically identify the

7

discrepancies between the medical record and Dr. Doucette's opinion but did conduct a review of the medical evidence elsewhere in her decision (Tr. 96-99).

The Court finds the ALJ did not provide "good reasons" for assigning Dr. Doucette's opinion "no weight." *Prosch*, 201 F.3d at 1013. First, as Plaintiff's primary care provider, Dr. Doucette has had an extensive treatment relationship with Plaintiff. At the time of her opinion, Dr. Doucette had been treating Plaintiff on a regular basis for approximately a year and a half (Tr. 1078, 1121-83). 20 C.F.R. § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion.").

Second, Dr. Doucette's opinion is the only medical opinion of record addressing the functional limitations of the entirety of Plaintiff's physical impairments. While neurologist Dr. Robert Margolis, M.D. ("Dr. Margolis") issued a report after examining Plaintiff on September 13, 2016, as noted by the ALJ, Dr. Margolis "only refers to [Plaintiff's] arm restrictions as functional limitations" (Tr. 99, 1093-98). Indeed, Dr. Margolis provided partial disability ratings based on Plaintiff's physical impairments to his face, back, and arm and concluded that Plaintiff's "conditions are hindrances and obstacles to the obtaining and maintaining of employment" (Tr. 1098). Dr. Margolis thereafter deferred to others when addressing functional limitations regarding areas other than Plaintiff's left arm (Tr. 1097-98). As to Plaintiff's left arm, Dr. Margolis opined Plaintiff "should avoid one arm lifting of greater than 25 pounds" (Tr. 1098). When the opinion of a consulting physician conflicts with the opinion of a treating physician, the ALJ must resolve the conflict. *Wagner v. Astrue*, 499 F.3d 842, 849 (8th Cir. 2007). To the extent there is a conflict here regarding Plaintiff's ability to lift weight with his left arm, the ALJ was within her right to resolve that conflict. However, regarding the functional

8

limitations as a result of Plaintiff's other impairments, Dr. Margolis' opinion does not ultimately address these impairments and, regardless, the opinion of a consulting physician who examines a claimant once or not at all does not constitute substantial evidence. *Wildman v. Astrue*, 596 F.3d 959, 967 (8th Cir. 2010). Regardless, as addressed in more detail below, the Court does not find Dr. Margolis' opinion supported by the record as a whole. *See Heino v. Astrue*, 578 F.3d 873, 879 (8th Cir. 2009) ("[A]n ALJ may credit other medical evaluations over that of the treating physician when such other assessments are supported by better or more thorough medical evidence.").

Third, to the extent the ALJ relies on her own observations during the hearing to discount Dr. Doucette's opinion, the Court finds this position unavailing (Tr. 100). The ALJ indicated that Plaintiff did not move from his sitting position during the hearing and found Plaintiff's lack of movement inconsistent with Dr. Doucette's opinion that Plaintiff would need to move at regular intervals during the working day (Tr. 1079-80). While the ALJ may properly rely on her own observations during the hearing, in this case, the ALJ's observation is not a "good reason" to afford Dr. Doucette's opinion "no weight" in light of the record to the contrary. *See Lamp v. Astrue*, 531 F.3d 629, 632 (8th Cir. 2008) ("While the ALJ's observations cannot be the sole basis of his decision, it is not an error to include his observations as one of several factors."). For example, during a mental health consultative examination, the psychologist noted, "[Plaintiff] had trouble staying in a single physical position during the interview; sitting, standing, kneeling and walking around, saying this is how he moves all day trying to avoid pain" (Tr. 1027).

Fourth, Dr. Doucette's opinion is consistent with the medical record as a whole. On July 15, 2013, Plaintiff fell from an approximately 10-foot ladder causing him to sustain a "severe" facial injury, and multiple fractures to the left wrist and hand (Tr. 389-451, 1030). In

9

the immediate aftermath of the fall, Plaintiff underwent a left forearm ulnar shortening osteotomy on July 19, 2013 and a closed reduction nasal septal fractures with intranasal splinting and external splinting on July 26, 2013 (Tr. 454-72, 474-85). Plaintiff was also subsequently diagnosed with a fracture to his right hand as an apparent result of the fall (Tr. 552-57). As noted by the ALJ, Plaintiff was released from hand restrictions on his right hand in September of 2013, and showed improvement on his left hand by January of 2014 (Tr. 570-74, 606-07). However, after the surgery, Plaintiff appears to have had "persistent painful symptoms around the plate" despite healing at the site which necessitated several more surgeries to the site (Tr. 524, 1037). Between January 2014 and December 2015, Plaintiff underwent five additional surgeries; three on his left wrist and arm and two on his face (Tr. 502-11, 513-22, 537-50, 1037, 1064). While Plaintiff was occasionally released back to work with restrictions consistent with the ALJ's RFC and even attempted to work for a period of time in 2014, as noted by Plaintiff, the significant amount of time Plaintiff would have missed work as a result of these surgeries and the subsequent recovery periods, would likely have precluded Plaintiff from gainful employment during this time (*See* Tr. 609 (A note from the orthopedist releasing Plaintiff to work on 1/3/14 with a restriction on not lifting more than 25 pounds on his left arm); 621-22, 626-27 (continued reports of pain during the two months of work)). For example, by July 2014, nearly a year after the accident, Plaintiff had stopped working again due to "neurogenic type symptoms" on the ulnar side of his left arm and was treated with an injection to the tender area (Tr. 629). On August 6, 2014, Plaintiff was diagnosed with left wrist ulnar impaction syndrome (Tr. 633-34). *See also* Tr. 823-25 (resuming physical therapy after surgery in November of 2014); 1037 (persistent painful symptoms resulting in removal of left forearm symptomatic hardware in August of 2015). Of note, the ALJ did not find Plaintiff's ulnar impaction syndrome to be a

severe impairment despite both Plaintiff's proper allegation of the disability on his application and the single decisionmaker at disability determination services finding it to be a severe impairment (Tr. 150, 155).

Furthermore, although Plaintiff showed improvement following his recovery from each surgery, the record is replete with indicia of Plaintiff's significant symptoms of pain for lengthy periods of time and, ultimately, chronic pain (Tr. 644, 1032, 1070, 1181). Regardless, the record indicates a compounding effect of these surgeries and the resultant chronic pain on Plaintiff's functional abilities and, not addressed in detail here, Plaintiff's mental health (Tr. 602, 612, 892, 1023-28, 1100-07, 1110-20, 1129-30, 1202). *See, e.g.,* 1068-70, 1072-74 (Post-Traumatic Stress Disorder, with Depersonalization, Major Depressive Disorder, with Anxious Distress, Severe); 1125 (finding the pain "[l]ikely related to previous injury, discussed neuron healing and associated pain and radicular complaints").

In sum, the ALJ did not provide "good reasons" for assigning the 2017 opinion of Dr. Doucette no weight in determining Plaintiff's RFC. *Reece*, 834 F.3d at 909. Thus, remand is required. *See Anderson v. Barnhart*, 312 F. Supp. 2d 1187, 1194 (E.D. Mo. 2004) ("Failure to provide good reasons for discrediting a treating physician's opinion is a ground for remand"); *Clover v. Astrue*, No. 4:07CV574-DJS, 2008 WL 3890497, at *12 (E.D. Mo. Aug. 19, 2008) ("Confronted with a decision that fails to provide 'good reasons' for the weight assigned to a treating physician's opinion, the district court must remand."); 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2) ("We will always give good reasons in our notice of determination or decision for the weight we give to your treating source's opinion.").

## V. CONCLUSION

For the reasons set forth above, the Court finds the ALJ's decision was not based on substantial evidence in the record as a whole and should be reversed and remanded. On remand, the ALJ is directed to conduct an appropriate analysis of Dr. Emily Doucette's medical opinion; further develop the medical record if necessary; and then proceed through the sequential evaluation process before issuing a new decision.

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment will accompany this Memorandum and Order.

Dated this 26th day of September, 2019.

/s/ Noelle C. Collins
NOELLE C. COLLINS
UNITED STATES MAGISTRATE JUDGE